JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant, Carla Carson, appeals her escape conviction. She raises two assignments of error for our review:
 {¶ 2} "[1.] The trial court erred when it denied appellant's motion for acquittal under Crim. R. 29 because the state failed to present sufficient evidence to establish beyond a reasonable doubt the elements necessary to support the conviction.
 {¶ 3} "[2.] Appellant's escape conviction is against the manifest weight of the evidence."
 {¶ 4} Finding no merit to the appeal, we affirm.
Procedural History and Facts
 {¶ 5} In May 2007, Carson was indicted for escape, in violation of R.C. 2921.34(A)(1), a felony of the fifth degree. She entered a plea of not guilty to the charge, and the case proceeded to a jury trial. The following evidence was presented at trial.
 {¶ 6} Officer Milo Tilocco of the Lyndhurst Police Department testified first. He explained that when he is off duty, he works security for Dillard's department store at Beachwood Mall. He was working at Dillard's on the day in question when he observed Carson on the video surveillance monitor walking around the junior department with an empty bag. He believed her actions to be suspicious, so he began to watch her.
 {¶ 7} Officer Tilocco stated that he saw her begin to carry "a couple of items" around the department store. She then went behind a display, and he lost sight of the "bag itself." When she came back out on the other side, the bag appeared to be *Page 4 
full. He waited for her to leave the store, and when she did, he stopped her and asked her if he could see what was in the bag. She cooperated with him and allowed him to look in the bag. There were clothes in it that had a value of approximately $260. There was no receipt in the bag. He detained her until Beachwood police officers arrived.
 {¶ 8} Officer James Krakora of the Beachwood Police Department testified that he responded to Dillard's on a report of a theft offense. He spoke to Officer Tilocco when he got there. Officer Tilocco told him what happened. Officer Krakora explained that at that time, Carson was accused of committing a misdemeanor theft based on the value of the clothes.
 {¶ 9} Officer Krakora testified that Carson was not cooperative with him. She provided him with a false name, birth date, and social security number. Later, he discovered her true identification. He said he arrested her at that point. He explained that she would have been transported to the Beachwood jail for processing, but "[a]s soon as the handcuffs were placed on her," she stated that she was suicidal, pregnant, and having an anxiety attack. As soon as she told him that, he contacted his "shift boss," who immediately dispatched an ambulance to the scene. Officer Krakora did not go to the hospital.
 {¶ 10} Officer Krakora stated on redirect examination that he arrested Carson for resisting arrest, possession of criminal tools, and obstructing justice.
 {¶ 11} Officer Preston LaFrance testified that he is an investigator for the Beachwood Police Department. He assisted Officer Krakora at Dillard's on the day *Page 5 
in question. Officer LaFrance stated that Carson was not cooperative. He explained that they had told Carson several times to "stay in the security area," but that she attempted to leave the "dressing room" where they were detaining her. He said that just after she was told that she was going to be arrested and after she was handcuffed, she complained of abdominal pain and threatened to kill herself.
 {¶ 12} The ambulance took Carson to South Pointe Hospital, where she was evaluated for abdominal pain and psychiatric issues. Officer LaFrance accompanied her to the hospital in the ambulance. Carson was handcuffed in the ambulance the entire time. When they got to the hospital, he handcuffed her to the bed rail.
 {¶ 13} Officer LaFrance testified that at one point, he removed Carson's handcuffs so that the emergency room staff could dress her in a hospital gown. Afterwards, he handcuffed her back to the bed rail. He took her handcuffs off again several other times. At one point, he only handcuffed one of her hands, so that she could continue to drink water with her other hand.
 {¶ 14} Officer LaFrance explained that he walked out to the hospital desk, which was approximately ten feet away from Carson's room, and as he was talking to the staff about a medication question Carson had for them, he turned around and saw her "fleeing from her room" in her hospital gown. She ran about 30 or 40 feet outside of the emergency room doors. When he caught her, he noticed that she did not have the handcuffs on her. When he took her back to her room, he saw that the handcuffs were still attached to the bed and that she had slipped out of them. *Page 6 
 {¶ 15} At the close of the state's case, Carson moved for a Crim. R. 29 acquittal, which the trial court denied. Carson rested, renewed her Crim. R. 29 motion, but it was also denied.
 {¶ 16} The jury found Carson guilty of escape as charged. The trial court sentenced her to one year in prison and ordered that it be served consecutive to the prison term she received in Case Nos. CR-494483 and CR-496212.[1] The trial court informed her that she would be subject to up to three years of postrelease control upon her release from prison.
 Crim. R. 29 {¶ 17} In her first assignment of error, Carson argues that the trial court erred when it did not grant her Crim. R. 29 motion for acquittal.
 {¶ 18} Under Crim. R. 29(A), a trial court "shall not order an entry of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt. State v. Bridgeman (1978),55 Ohio St.2d 261, syllabus. The test an appellate court must apply in reviewing a challenge based on a denial of a motion for acquittal is the same as a challenge based on sufficiency of the evidence to support a conviction. See State v. Bell (May 26, 1994), 8th Dist. No. 65356. *Page 7 
 {¶ 19} An appellate court's function in reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." State v. Thompkins (1997), 78 Ohio St.3d 380, 386. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.Jenks at 273.
 {¶ 20} Carson was convicted of escape, under R.C. 2921.34(A)(1), which provides in pertinent part that "[n]o person, knowing the person is under detention or being reckless in that regard, shall purposely break or attempt to break the detention ***." Detention includes being under arrest. R.C. 2921.01(E).
 {¶ 21} "An arrest occurs when: (1) an officer intends to arrest; (2) the officer has real or pretended authority to arrest; (3) the officer secures actual or constructive detention of the person; and (4) the person understands he or she is under arrest." State v. Newman, 4th Dist. No. 01CA2819, 2004-Ohio-2262, _14, citing State v. Barker (1978),53 Ohio St.2d 135, paragraph one of the syllabus.
 {¶ 22} The court in Newman further explained: *Page 8 
 {¶ 23} "`A person is under "detention" as that term is used in R.C. 2921.34, when he is arrested and the arresting officer has established control over his person.' State v. Reed (1981), 65 Ohio St.2d 117, syllabus. Further, `control can be established by the surrender or submission by the person or by police exertion of control over the person.' State v. Jackson (1992), 83 Ohio App.3d 298, 300. Additionally, `the "control" necessary to establish detention need not be established by physical restraint.' State v. Davis (1992), 81 Ohio App.3d 706, 720. We must determine whether an officer had control of an accused on a case-by-case basis. State v. Huffman (1987), 38 Ohio App.3d 84, 85."Newman at ¶ 15.
 {¶ 24} Carson maintains that the state did not present sufficient evidence as to prove beyond a reasonable doubt that she (1) was lawfully arrested; (2) was under detention; or (3) knew or understood that she was under detention when she attempted to leave the hospital. We disagree.
 {¶ 25} After a review of the record, we find the state presented sufficient evidence to convict Carson of escape. Carson argues that she was never arrested because Officer LaFrance testified that she was merely "advised" that "she was going to be arrested for the shoplifting." (Emphasis added.) Carson is correct that Officer LaFrance testified to that, however, that does not mean she was not arrested or did not understand that she was being arrested. Officer Krakora testified that he arrested Carson and placed handcuffs on her. Officer LaFrance also testified later that Carson was arrested at the time she was transported to the hospital. In addition, Carson was handcuffed the entire way to the hospital and the entire time *Page 9 
she was at the hospital, except to get undressed, drink a glass of water, and go to the bathroom. She squeezed out of her handcuffs and ran out of the hospital. Any rational trier of fact could have found beyond a reasonable doubt that she was arrested (i.e., "detained" for purposes of proving escape), and that she understood that she had been arrested.
 {¶ 26} Carson further argues that she was not "detained" because of the "irregularity in the detention" under R.C. 2921.34(B).
 {¶ 27} R.C. 2921.34(B) recognizes an affirmative defense to the charge of escape. It provides:
 {¶ 28} "Irregularity in bringing about or maintaining detention, or lack of jurisdiction of the committing or detaining authority, is not a defense to a charge under this section if the detention is pursuant to judicial order or in a detention facility. In the case of any other detention, irregularity or lack of jurisdiction is an affirmative defense only if either of the following occurs:
 {¶ 29} "(1) The escape involved no substantial risk of harm to the person or property of another.
 {¶ 30} "(2) The detaining authority knew or should have known there was no legal basis or authority for the detention."
 {¶ 31} First, Carson maintains that because she was taken to the hospital instead of jail, her detention was irregular. Second, she contends that because the officers did not effectuate a valid arrest, she was entitled to the defense of irregularity. We find no merit to either of her arguments. *Page 10 
 {¶ 32} "The burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, for an affirmative defense, is upon the accused." R.C. 2901.05(A).
 {¶ 33} Under the facts of this case, we do not find that Carson's detention was irregular because they took her to the hospital rather than the police station. The officers arrested Carson and established control over her. She was handcuffed from the time she was arrested and throughout the entire time in the ambulance and at the hospital, except for a few necessary times when she needed to use her hands. But at all times when the handcuffs were taken off of her, the police officer still had control over her. It is the control, not the handcuffs, that encompasses the meaning of "under detention." See State v. Powell, 4th Dist. No. 07CA20, 2008-Ohio-4171, ¶ 39 (a person can be "under detention with or without physical restraint"). Based on these facts, we find nothing "irregular" about Carson's detention just because she was transported to the hospital.
 {¶ 34} Carson also maintains that her detention was irregular because she was not read her Miranda rights, and thus, her arrest was unlawful. Even if the facts established that she was not read her Miranda rights, which they do not, that would not make her arrest invalid. Beyond her identity information, there is no evidence that the officers questioned her in any way. "`Only a custodial interrogation triggers the need for aMiranda rights warning.'" State v. Trent (Dec. 23, 1999), 2d Dist. No. 17705, quoting Berkemer v. McCarty (1984), 468 U.S. 420. *Page 11 
 {¶ 35} Accordingly, viewing the facts in a light most favorable to the prosecution, we find that there was sufficient evidence to prove the elements of escape beyond a reasonable doubt. Carson's first assignment of error is overruled.
 Manifest Weight of the Evidence {¶ 36} Carson also maintains that her conviction was against the manifest weight of the evidence.
 {¶ 37} "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. *** Weight of the evidence concerns `the inclination of thegreater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. *** Weight is not a question of mathematics, but depends on its effect in inducing belief.' (Emphasis added.) ***
 {¶ 38} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony. *** `The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new *Page 12 
trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" (Internal citations omitted.) Thompkins at 387.
 {¶ 39} In this assignment of error, Carson argues that her conviction was "against the manifest weight of the evidence for the same reasons that they were based on insufficient evidence." Based on the same evidence we recited with respect to sufficiency, we find that the jury did not clearly lose its way or create a manifest miscarriage of justice such that Carson's conviction was against the manifest weight of the evidence.
 {¶ 40} Accordingly, Carson's second assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 13 
ANN DYKE, P.J., and JAMES J. SWEENEY, J., CONCUR.
[1] In these two cases, Carson was convicted of two counts of theft for incidents that occurred in February and April 2007 at a Dillard's store located in Strongsville. She appealed those convictions, which were consolidated on appeal. See State v. Carson, 8th Dist. Nos. 90974 and 90976. *Page 1